# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-00267-SCT

*MELVIN DARNELL RANSOM*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2000 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PRO SE |
| | W. E. GORE, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | FAYE PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED - 09/22/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.    Melvin Darnell Ransom was convicted of strong-arm robbery and sentenced by the Hinds County Circuit Court to serve a term of fifteen years in prison. Ransom's appeal of his conviction was assigned to the Court of Appeals. A divided (4-3-2) Court of Appeals found that trial counsel was ineffective when it failed to investigate alibi testimony and to timely disclose

a list of the alibi witnesses. Accordingly, the Court of Appeals reversed the judgment and remanded the case for a new trial. **Ransom v. State,** 2004 WL 2283609 (Miss. Ct. App. 2004). The Court of Appeals denied the State's motion for rehearing. The State filed a petition for a writ of certiorari which this Court granted.

## FACTS

¶2. At 1:30 p.m., on September 15, 1997, Leigh White went into a post office where she was confronted by a person who snatched her purse and ran away. White testified that during the robbery, the robber was "right in her face." She testified that she absolutely had a good opportunity to see his face. The robber had to struggle to remove the purse from White's shoulder. White yelled at the robber and ran after him. The robber then turned around, came back toward White, hit her in the face and knocked her down. White's boss, Lou Morlino, came outside when he saw White lying against the glass door of the post office. Morlino chased the robber. He got as close as the driver's side of the robber's car, but he was unable to detain him. Both White and Morlino saw the robber getting into the get-away car. Each gave a physical description of the robber to the police. White was able to describe the vehicle. Both White and Morlino were able to recall the license plate number. Morlino indicated that when he ran beside the robber's vehicle there was no other person in the vehicle except the robber.

¶3. Detective Al Taylor testified that when he ran the tag number that was given to him by White and Morlino, he learned that the car was registered to Melvin Darnell Ransom. The description of the vehicle given by White also matched Ransom's vehicle. Taylor later contacted White and presented her with a photographic line-up of the potential suspects. She

identified Ransom as the robber. During the trial, both White and Morlino identified Ransom as the person who attacked and robbed White.

¶4. Ransom denied that he committed the robbery stating that he had an alibi. Ransom insinuated that his cousin, Vincent McGrew, committed the crime. However, when defense counsel called McGrew to the stand, McGrew invoked his Fifth Amendment right against self-incrimination and refused to answer any questions pertaining to the case.

¶5. Ransom's attorney did not disclose his alibi witnesses to the State until the morning of the trial. The State moved to exclude the testimony of these witnesses on the basis of unfair surprise. The trial court gave the State an opportunity to interview the witnesses. After the interviewing the witnesses, the State still insisted that witnesses not be allowed to testify because the State had not had time to investigate the assertions of the witnesses. Based on the State's objection, the trial court refused to allow the alibi witnesses to testify.

**DISCUSSION**

¶6. The State argues that the Court of Appeals erred by not applying its holding in *Colenburg v. State*, 735 So.2d 1099 (Miss. Ct. App. 1999). The State argues that on direct appeal "the reviewing court must find that the record supports a finding that the trial counsel was so ineffective that the trial [j]udge had a duty to declare a mistrial *sua sponte*."

¶7. However, the Court of Appeals in *Colenburg* stated that *Read v. State*, 430 So.2d 832 (Miss. 1983), applied to allow ineffective assistance of counsel to be reviewed on direct appeal. *Colenburg*, 735 So.2d at 1102. The Court of Appeals in *Colenburg* further stated:

"**The question presented on this appeal is not whether trial counsel was or was not ineffective** but whether the trial judge, as a matter of law, had a duty to declare a mistrial or

3

to order a new trial, *sua sponte* on the basis of trial counsel's performance." (emphasis added).

¶8. That is not the issue at hand. Here, Ransom's appellate counsel, attorney W. E. Gore, Jr., raised the issue of whether Ransom's trial counsel, attorney Peter Stewart, provided ineffective assistance of counsel. Therefore, the State is incorrect in arguing that the Court of Appeals applied an incorrect legal standard and misapplied its holding in **Colenburg**.

¶9. Inadequacy of counsel is not "to be determined by whether or not the case was won or lost. [Inadequacy of counsel is] representation so lacking in competence that it becomes apparent or should be apparent that it is the duty of the trial judge to correct it so as to prevent a mockery of justice." **Parham v. State**, 229 So.2d 582, 583 (Miss. 1969).

¶10. In **Read**, 430 So.2d at 841, this Court held: "**Any defendant convicted of a crime may raise the issue of ineffective assistance of counsel on direct appeal**, even though the matter has not first been presented to the trial court. The Court should review the entire record on appeal." (emphasis added).

¶11. To determine whether counsel has been ineffective, this Court uses the two-pronged test announced in **Strickland v. Washington**, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). **Stringer v. State**, 454 So. 2d 468, 476 (Miss. 1984).

¶12. This Court has stated:

> The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. **Strickland v. Washington**, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The test is two pronged: The defendant must demonstrate that his counsel's performance was deficient, and that the deficiency prejudiced the defense of the case. **Strickland**, 466 U.S. at 687, 104

4

S.Ct. at 2064; *Washington v. State*, 620 So.2d 966 (Miss.1993). 'This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.' *Stringer v. State*, 454 So.2d 468, 477 (Miss.1984), citing *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064. 'In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' *Stringer* at 477, citing *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *State v. Tokman*, 564 So.2d 1339, 1343 (Miss.1990).

Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' *Stringer* at 477; *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. In short, defense counsel is presumed competent. *Johnson v. State*, 476 So.2d 1195, 1204 (Miss.1985); *Washington v. State*, 620 So.2d 966 (Miss.1993).

**Then, to determine the second prong of prejudice to the defense, the standard is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'** *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991). This means a 'probability sufficient to undermine the confidence in the outcome.' *Id*. The question here is whether there is a reasonable probability that, absent the errors, the sentence--including **an appellate court, to the extent it independently reweighs the evidence**--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068.

There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988); *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the

proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State*, 584 So.2d 426 (Miss.1991).

*Foster v. State*, 687 So.2d 1124, 1129-30 (Miss. 1996) (emphasis added).

¶13. In this case, Ransom fails to satisfy the second prong of the *Strickland* test. Although the actions of Ransom's counsel were not error-free, the error of untimely witness disclosure was not so egregious as to "undermine the confidence in the outcome." This Court has determined that if information is material "its suppression undermines the confidence of the outcome of the trial," and if that information has been suppressed, then the judgment must be vacated and a new trial granted. *Malone v. State*, 486 So.2d 367, 369 (Miss. 1986).

¶14. We find that the confidence in the outcome is not undermined for the following reasons. The disallowed alibi testimony is very weak, unpersuasive given the strength of the opposing evidence, and even contradictory. The evidence against Ransom is very persuasive.

### A. Weak Alibi Testimony

¶15. Marcia Thurman, Ransom's girlfriend, testified during the hearing on Ransom's motion for a new trial that McGrew used Ransom's car to drop her off at work at least by 10 a.m. and pick her up at 4:30 p.m. on the day of the robbery. In his dissent, Court of Appeals Judge Tyree Irving elaborated as follows:

> [Marcia] offered no insight as to whether McGrew kept the car the entire time during the interim. Neither did she have any specific recollection of that day. She based her testimony on what work schedule showed for that day. She testified that Ransom was at home mowing his mother's yard on the day of the robbery ... However, it is clear that she had no way of knowing what Ransom did on the day in question because [they were more than fourteen miles apart from 10 a.m. to 4:30 p.m.]. She later acknowledged during direct examination that the source of her information as to Ransom's whereabouts on the day in question was Ransom himself.

6

*Ransom v. State*, 2004 WL 2283609, * 7 (Irving, J., dissenting). Thurman testified that she did not see Ransom before she went to work. She testified that she started work between 8:30 a.m. to 10 a.m. and worked until 4:30 p.m. Thurman stated that she could not recall seeing Ransom that day after work. Therefore, Thurman provides no alibi for the time that the robbery occurred at 1:30 p.m.

¶16. During the State's interviews with Ransom's mother and sister, their statements were very similar to each other. Both claimed that Ransom was home with them on the day of the robbery. However, his mother's statement added that the "car [used in the robbery] had been missing for some time." Judge Irving stated:

> Ransom's mother and sister presumably would have testified that Ransom was at home all day, mowing the mother's yard all day. **But, the mother would have also testified that the car used in the robbery had been missing for some time, thus contradicting Ransom's testimony that he had loaned his car to McGrew on the day in question.**

*Id*. at * 8 (emphasis added). Therefore, had the mother testified, she would have contradicted Ransom's testimony that he allowed McGrew to borrow the vehicle that day.

¶17. To a lesser extent, the passage of time coupled with the absence of any record of activity also weakened Ransom's credibility and that of his witnesses.

¶18. Judge Irving stated in his dissent as follows:

> Prior to seeing himself [in a "Most Wanted" photo] in the newspaper in February 1998, he had not kept a record of his daily activities. He had no reason to do so; yet after he as arrested, he was able to recall exactly what he was doing six months earlier on September 15, 1997. . . . He is not able to cite a single event or occurrence which caused his whereabouts on that particular day to be memorialized for later recall. In the absence of some memorable event which aided Ransom's ability to recall his precise activity six months earlier, I do not think a jury would embrace his statement that he was mowing his mother's lawn.

7

*Id*. at * 6.

¶19.    Ransom, his sister, mother and girlfriend all stated that he *occasionally* loaned his car to McGrew, and *several times* allowed McGrew to drive Ransom's girlfriend to work. However, the only proof that Ransom loaned the car to McGrew on the specific day in question was Ransom's testimony and that of his girlfriend, Marcia. Their credibility is severely diminished as Marcia and Ransom failed to explain how they remembered a specific event six months prior to testifying about the occasion.

¶20.    Ransom testified at trial.    When asked to produce any record to substantiate his presence at his mother's house on the day in question, Ransom produced nothing. Ransom recalled his whereabouts on that particular day, stating: "The *only* thing that made me know where I was [on September 15, 1997] was because my girlfriend kept records of the day that -- the dates that she was at work, and I knew I let [McGrew] drop her off *several times* at work." (emphasis added).

¶21.    Ransom claims that he was at his mother's home based on the dates that his girlfriend worked. However, he did not explain how he remembered McGrew took his girlfriend to work in his car on *this particular day*.    In his dissent Judge Irving concluded: "I do not believe for one nanosecond that the disallowed evidence was so probative of Ransom's innocence that it can be said by a reviewing court that the refusal of the trial court to allow it constitutes an abuse of discretion." *Id*. at * 9.

## B.  Strong Opposing Testimony

¶22.    Not only is evidence of innocence practically nonexistent, the evidence of guilt is very persuasive. Judge Irving stated:

> According to Detective Taylor, **Leigh White, the victim of the robbery, immediately identified Ransom when she was shown a photo lineup the day after the robbery**... Six months later when Lou Morlino, White's boss, was shown the same photo lineup, with the pictures arranged in a different order, **he immediately identified Ransom**. Both White and Morlino had ample time to observe the attacker.

*Id*. at *7 (emphasis added).

¶23.     Judge Irving's dissent noted that White and Morlino had ample time to observe the attacker. According to the record, the robber turned and faced White after she pursued him. Both White and Morlino witnessed the robber getting into the get-away-car; both were able to recall the license plate number. Morlino chased the robber and got as close as the driver's side of the robber's car. Morlino testified that there was no other person in the car except the robber, each was able to give a physical description of the robber to the police, and the license plate number belonged to Ransom.

¶24. For these reasons, we find that the Court of Appeals erroneously determined that the disallowed witnesses' testimonies would likely have made a difference in the result of the trial.

### CONCLUSION

¶25.     We find that the Court of Appeals erred in its decision to reverse and render Ransom's conviction of strong arm robbery. When the issue of ineffective assistance of counsel is raised, pursuant to the second prong of the *Strickland* test, we must review the evidence to determine whether a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Here, the record does not establish that Ransom's trial counsel provided ineffective representation. Ransom testified that he loaned

9

his vehicle to McGrew on the day in question. McGrew was called as a witness by the defense and pled his Fifth Amendment immunity from incriminating himself. The victim, White, and the eyewitness, Morlino, picked Ransom out of a photographic lineup. Both White and Morlino identified Ransom at trial. Thus, the Court of Appeals erred in finding that under *Strickland* there was a sufficient basis to conclude that Ransom's trial attorney's performance was deficient and that the outcome of the trial would have been different. Therefore, the judgment of the Court of Appeals is reversed, and the judgment of the Hinds County Circuit Court is affirmed.

¶26. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. CONVICTION OF STRONG ARM ROBBERY AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL RECEIVE CREDIT FOR TIME SERVED IN THIS CAUSE.**

**SMITH, C.J., WALLER, P.J., AND CARLSON, J., CONCUR. COBB, P.J., CONCURS IN RESULT ONLY. DICKINSON, J.,  DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES AND RANDOLPH, JJ. DIAZ, J., NOT PARTICIPATING**.

**DICKINSON, JUSTICE, DISSENTING:**

¶27. Because the plurality has chosen to review the proposed testimony of the alibi witnesses, weigh the evidence including the credibility of the alibi witnesses, and decide the jury would have reached the same conclusion, I must respectfully dissent. While the jury might have reached the same result, we are not to make that determination. Rather, I have determined that there is a reasonable probability that but for the attorney's errors, Ransom would have received a different result in the trial court.

10

¶28. To determine whether counsel has been ineffective, the plurality correctly relies on the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). While not expressly stated, it appears the plurality recognizes that the actions by Ransom's counsel were not error-free. However, the plurality incorrectly concludes that these deficiencies by counsel did not prejudice the defense of the case. It is critical to recognize that this is not a case involving an attorney's decision to call certain witnesses, ask certain questions, or make certain objections. *See Cole v. State*, 666 So.2d 767, 777 (Miss. 1995). I would agree that these types of decisions do fall under the umbrella of trial strategy and do not give rise to an ineffective assistance of counsel claim. Unfortunately for Ransom, this is a case involving an attorney who failed to investigate his client's alibi witnesses, failed to prepare such witnesses for examination, failed to disclose the proposed alibi witnesses to the prosecution until the morning of trial, and failed to even develop a trial strategy. In *Payton v. State*, 708 So.2d 559 (Miss. 1998), this Court held that while the court should give deference to an attorney's judgment, counsel "[a]t a minimum . . . has a duty to interview potential witnesses and to make *independent* investigation of the facts and circumstances of the case." *Payton,* 708 So.2d at 559 (quoting *Ferguson v. State*, 507 So.2d 94 (Miss. 1987) (emphasis in the original)). If Ransom's counsel had in fact made such independent investigation of the facts and circumstances, he would have discovered that Ransom's cousin and potential alibi was not in prison on the date of the criminal act. Additionally, if Ransom's counsel had interviewed potential witnesses, he certainly would have become aware of the proposed alibi testimony of Ransom's mother and sister.

¶29.   As to the reasons or excuses for Ransom's counsel's failure to investigate, interview, and disclose the proposed alibi witnesses, the record only establishes that Ransom's attorney had not planned to call these witnesses because of his mistaken belief that McGrew was in jail on the day of the robbery.  Ransom's attorney never confirmed this fact, and if he had, he would have discovered that McGrew was not in jail.  This information along with the other witness information was available to Ransom's counsel for months prior to the trial.  Failure to conduct even minimal pretrial investigation is inexcusably deficient performance by Ransom's attorney.

¶30.   Because Ransom satisfies the first prong of the *Strickland* test, the only issue remaining is whether such deficient performance prejudiced the defense of the case.  Unlike the plurality, I do not attempt to determine the credibility of the proposed alibi witnesses, nor do I attempt to weigh their proposed testimony against the testimony of the eyewitnesses.  This, I believe, is the role of the jury.  My role is to determine whether Ransom's attorney's performance fell below the standard of reasonableness and whether these mistakes were serious enough to erode confidence in the outcome of the trial below.  The evidence establishes that prior to trial Ransom informed his attorney that his cousin McGrew had borrowed his car on the day in question and committed the robbery.  There is also evidence in the record that Ransom's attorney admitted he was aware of Ransom's alibi defense several months prior to trial, yet he failed to discover the validity of such alibis until the day before the trial.  These proposed witnesses were prepared to testify that Ransom was at home on the day in question which supports Ransom's claim that McGrew had borrowed his car on the day in question.  Also, Ransom presented an affidavit from his girlfriend stating that on the day in

12

question McGrew borrowed Ransom's car and took her to work. It is clear that the alibis' testimony is consistent with Ransom's suggestion that he was at home and had loaned his car to his cousin on the day of the crime.

¶31. The mistakes by Ransom's counsel which prevented the alibis' testimony fell below the standard of reasonableness and were serious enough to erode confidence in the outcome of the trial below. Ransom's counsel's deficiency prejudiced the defense by preventing the introduction of several alibi witnesses whose proposed testimony could have changed the outcome below. The plurality chooses to step into the role of the jury and weigh the evidence along with the credibility of the witnesses to determine if the jury would have reached the same result. It is this that I refrain from doing. The second step of the *Strickland* test basically asks whether the counsel's errors were so serious as to deprive the defendant of a fair trial. Without the opportunity to present a defense that included testimony from alibi witnesses that he was at home on the day of the robbery, Ransom was denied a fair trial. Ransom should be given the opportunity to present such testimony and evidence, and then a jury should be given the opportunity to consider the evidence, weigh the evidence against the eyewitness testimony, and determine the credibility of the alibi witnesses.

¶32. Despite having access to alibi witness information months before trial, Ransom's attorney appeared in court unprepared to adequately defend his client. Counsel had made no effort to conduct his own pretrial investigation or interview potential alibi witnesses. Thus, I cannot say Ransom's attorney's actions constituted a reasonable trial strategy. Rather, I conclude that the performance by Ransom's attorney was deficient, and this deficiency was serious enough to erode confidence in the outcome of the trial below. If the jury had been

13

given the opportunity to listen to the alibis' testimony, weigh their testimony against the eyewitnesses' testimony, and determine the credibility of the alibis, there is a reasonable probability that but for Ransom's attorney's errors, Ransom would have received a different result. Therefore, I would affirm the Court of Appeals' judgment which reversed the trial court's judgment and remanded the case for a new trial. For these reasons, I respectfully dissent.

**GRAVES AND RANDOLPH, JJ., JOIN THIS OPINION.**