# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01350-SCT

*DEWAYNE HARRELL a/k/a DWAYNE HARRELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2004 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM E. GOODWIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | DEE BATES, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/25/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DIAZ AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Convicted of aggravated assault and sentenced to twenty years' imprisonment and the payment of restitution, court-appointed attorney's fees, and court costs, Dewayne Harrell appeals, contending that his trial counsel was ineffective. Because Harrell has failed to demonstrate that counsel's performance was deficient and that it prejudiced him, this Court affirms.

### FACTS AND PROCEDURAL HISTORY

¶2.     Approximately six months prior to November 16, 2001, Dewayne Harrell ("Harrell") and Marvin Bates ("Bates") were involved in a physical altercation with each other at an Exxon station in McComb, Mississippi.  The next time Harrell and Bates came into contact with one another was November 16, 2001.   Bates and his cousin, Fernando Chesser ("Chesser"), left a pool hall to get their lunch. After retrieving their lunches, Bates and Chesser were walking down a street toward the home of an acquaintance. While they were crossing the street, a car occupied by Harrell, Vasco Hale ("Hale") and Lashorn Harrell ("Lashorn") pulled up. Harrell exited the vehicle with a bottle, which he threw at Bates, who successfully dodged it. These facts are admitted by both parties.

¶3.     An altercation ensued, and Bates was shot. The testimony is disputed as to who shot Bates.   Bates and Chesser claim Harrell pulled a gun out of his shirt and shot Bates. Harrell claims the fight was a "free for all" and that he did not shoot Bates, and as soon as Harrell and Lashorn heard the shots, they ran away. Harrell claims he has never owned a gun and that Chesser, who is Bates's cousin and friend, shot Bates.

¶4.     Bates, as well as a witness, Shamekia Jackson ("Jackson"), called the police. When the police arrived to investigate, Bates told Detective Randy Perryman ("Perryman") of the Magnolia Police Department that he had been shot by Harrell.

¶5.     A Pike County Grand Jury indicted Harrell for aggravated assault. Harrell filed an Affidavit of Indigency and Application for Appointment of Counsel. Thomas Welch, Jr., ("Welch"), of the Pike County Public Defender's Office was appointed as counsel for Harrell. Further, Harrell waived his arraignment and entered a plea of not guilty.

¶6. Harrell was found guilty of aggravated assault by a jury. At the sentencing hearing, another public defender, Nelson Estess ("Estess"), acted as counsel for Harrell. Harrell was sentenced to twenty years in prison and was ordered to pay restitution in the amount of $52,184.67 to Federated Mutual Insurance; $39,162.51 to Southwest Mississippi Regional Medical Center; $10,000 to the Crime Victims' Compensation Fund; and $2,500 for court appointed attorney's fees.

¶7. The circuit court denied Harrell's Motion for Judgment Notwithstanding the Verdict, or in the Alternative, Motion for New Trial. The order was prepared and presented by counsel for Harrell, although the Motion for JNOV, or in the Alternative, Motion for New Trial is not included in the record. Harrell timely filed this appeal and asserts that he was denied effective assistance of counsel.

## STANDARD OF REVIEW

¶8. The Sixth Amendment to the United States Constitution guarantees the right to assistance of counsel. U.S. Const. amend. VI. "Any defendant convicted of a crime may raise the issue of ineffective assistance of counsel on direct appeal, even though the matter has not first been presented to the trial court. The Court should review the entire record on appeal." *Read v. State,* 430 So.2d 832, 841 (Miss. 1983). This Court has stated:

> Mississippi has recognized that a strong presumption of competence exists in favor of the attorney. *Mohr [v. State],* 584 So.2d [426,] 430 [(Miss. 1991)]. The test is one of reasonableness; counsel must have provided "reasonably effective assistance." *Strickland [v. Washington],* 466 U.S. [668,] 687, 104 S.Ct. 2052[, 80 L.Ed. 2d 674 (1984)]. For a defendant to prevail on a claim of ineffectiveness, counsel's representation must have fallen 'below an objective standard of reasonableness." *Id.* at 688....

3

*Havard v. State,* 928 So.2d 771, 780-81 (Miss. 2006).

## ANALYSIS

### Whether Harrell received effective assistance of counsel

¶9.    "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). This Court has noted:

> Judicial scrutiny of counsel's performance must be highly deferential.... [A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption, that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Byrom v. State,* 927 So.2d 709, 714 (Miss. 2006) (citations omitted).

¶10.    A claim for ineffective assistance of counsel must meet the two-prong test outlined in *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See Bennett v. State,* 933 So.2d 930, 943 (Miss. 2006); *Sipp v. State,* 2006 Miss. LEXIS 326, 334 (Miss. 2006); *Byrom v. State,* 927 So.2d at 714.  This Court has stated:

> The test is two pronged: The defendant must demonstrate that his counsel's performance was deficient, and that the deficiency prejudiced the defense of the case. *Strickland,* 466 U.S. at 687; *Washington v. State,* 620 So.2d 966 (Miss. 1993). 'This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the

4

result unreliable.' 'In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'

*Ransom v. State,* 919 So.2d 887, 889 (Miss. 2005) (citations omitted).

¶11.   "To determine the second prong of prejudice to the defense, the standard is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Mohr v. State,* 584 So.2d 426, 430 (Miss. 1991). This means a 'probability sufficient to undermine the confidence in the outcome.'*Id." Id.* at 890.

¶12.   Harrell claims he was denied effective assistance of counsel for the following reasons: (a) No witnesses were subpoenaed to court on his behalf; (b) no preparation by counsel until the eve of trial and no formal motion for a continuance was made by counsel; (c) improper voir dire and no request for a mistrial when jurors allegedly had improper contact with Harrell's family; (d) no motion for JNOV or new trial was filed by the defense; and (e) he was not given an opportunity for allocution at his sentencing hearing, as his attorney did not appear at the sentencing hearing.

**(a) Harrell claims no witnesses were subpoenaed on his behalf**

¶13.   Harrell contends there was no witness list or subpoena requests filed on his behalf. In an Omnibus Order, when asked if Harrell may, will or will not call witnesses, Harrell stated, "He *may* testify," "he *may* call additional witnesses" and "character witnesses *may* be called." The State filed a witness list and requested subpoenas for nine witnesses to appear. The State's witness list states that counsel for Harrell received a copy. Welch confirmed he

5

received this list and on it were the two witnesses which he intended to call, Hale and Lashorn. When the trial judge asked Welch whether he issued subpoenas for these witnesses, Welch responded that the State had issued subpoenas for them. The State confirmed the witnesses were on their witness list. Prior to trial, it was discovered Hale had moved to New York City and could not be located. When counsel for Harrell discovered Hale was not available, he made a motion for continuance as he asserted Hale was important to Harrell's defense. This motion was denied by the trial court. The testimony of Hale was previously recorded, and the tape was preserved. The State argued the testimony of Hale supported the prosecution, although admittedly not as strongly as some of the other witnesses. Hale never exonerated Harrell from responsibility for the shooting in his recorded testimony. Harrell has failed to establish that the failure to ensure Hale testified prejudiced his defense.

¶14.    At trial, the State called seven witnesses. Jackson, an eyewitness, testified she heard a gunshot and saw Bates running from Harrell. She called 911 to report someone had been shot. During her interview by the police, Jackson stated she saw Harrell with a gun. Chesser testified he saw Harrell pull a gun and shoot Bates. The State also called Dr. William Dixon, who treated Bates when he arrived at the hospital. Dr. Dixon testified that when he took Bates's medical history for treatment, Bates told him he had been shot by Harrell. The State also called Officer Perryman, who was at the scene and interviewed witnesses, and Magnolia Police Officer Robert Holmes, who also interviewed witnesses. The State then called the victim, Bates, who testified Harrell shot him. Additionally, the State called Lashorn as an

6

adverse witness. He testified it was not Harrell who shot Bates. Harrell took the stand in his defense and denied that he shot Bates.

¶15.   Defense counsel knew two of Harrell's witnesses were under subpoena by the State. The State argues Welch was justified in relying on the State's witness list and subpoenas to bring these witnesses to court and this could be considered strategy pursuant to *Byrom v. State.* Further, "[c]ounsel's choice of whether to call witnesses and ask certain questions falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Jackson v. State,* 815 So.2d 1196, 1200 (Miss. 2002) (citation omitted). It can be persuasively argued that such action was strategically employed to conceal the defendant's intent to utilize the State's witnesses in his defense. Furthermore, there is no guarantee that Hale would have testified even if he appeared, as he could have exercised his privilege not to testify. Harrell asks this Court to assume or speculate that: (1) Hale would not have exercised his Fifth Amendment right; (2) Hale would have testified; and (3) that Hale's testimony would convince a jury of Harrell's innocence in light of overwhelming evidence to the contrary. Harrell has failed to satisfy either prong of the *Strickland* test, as his defense was neither prejudiced by counsel's failing to subpoena these witnesses, nor does this Court have facts to support a finding that his defense prejudiced by Hale's failure to appear.

> **(b) Harrell claims there was no preparation by counsel until the eve of trial. Harrell states counsel should have made a Motion for Continuance if counsel was unprepared.**

¶16.   Counsel for Harrell stated to the trial judge, "At approximately 9:00 yesterday, July 14, I was under the impression that Mr. Harrell's case would be tried next week. At

7

approximately 10:00 or 10:30 yesterday morning, I was informed that his trial would be held on Friday at 9:00. I brought Mr. Harrell in. We discussed his case *again*, made trial preparations and told him to call me this afternoon." (Emphasis added). Trial in this matter was held on Thursday, July 15, 2004. Counsel for Harrell stated Harrell did not know until the night before his trial had been moved from Friday to Thursday.

¶17. This case was set for trial on two occasions prior to July 15th. The case was continued on one occasion by agreement of both parties and on another occasion by the trial court due to an ongoing civil trial. The State stated to the trial judge, "But we have been ready and I think the defense has been ready, at least on that prior occasion." When asked by the judge if counsel for Harrell was ready to proceed to trial, counsel announced ready.

¶18. Aside from the foregoing conversation with the trial judge, Harrell offers no proof that counsel failed to prepare, or that he had only prepared on the eve of trial. The paucity of evidence presented does not evince that counsel for Harrell was not prepared. Without support in the record, Harrell fails to establish that the performance of his counsel was deficient according to *Strickland.*

    **(c) Harrell claims proper voir dire of the jury was not made and there was no request for a mistrial when jurors had improper contact with Harrell's family.**

¶19. Harrell asserts that his counsel did not conduct a proper voir dire of the jury and that this had a detrimental effect when it was later discovered Harrell's father was friendly with two of the jurors and actually went to lunch with them during the trial.

¶20.    During voir dire of the jury, the trial judge asked if anyone knew Harrell or his family. There were seven potential jurors who raised their hands. Each of these seven were properly questioned by the judge and asked how they knew Harrell and his family, and if they could be fair and impartial in trial. Each of the jurors, with the exception of one who was subsequently excused, responded they could be fair and impartial during trial. Further during voir dire, the State asked potential jurors if they knew Harrell or specifically, Harrell's mother. Five potential jurors raised their hands, and each was asked about their relationship with Harrell's mother was and if they could be fair and impartial during trial. Each of the jurors responded they could be fair and impartial. The jury was further asked by the trial court, as well as the State, if they knew any of the potential witnesses or attorneys and if any had a relationship with one of these witnesses or attorneys, would this relationship affect their ability to be fair and impartial. Each of the jurors who knew the attorneys or potential witnesses stated this would not affect their ability to be fair and impartial.

¶21.    During voir dire, counsel for Harrell did not ask any questions. He stated to the jury, "Ladies and Gentlemen, the judge has asked some good questions. The D.A. has asked a bunch of good questions. I really don't have an awful lot to ask you." In ***Burns v. State,*** this Court quoted the Fifth Circuit's stance on this issue as, "[g]enerally, the Fifth Circuit considers an attorney's actions during voir dire to be a matter of trial strategy, which 'cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" ***Burns v. State,*** 813 So.2d 668, 675-76 (Miss. 2001) (quoting ***Teague v. Scott,*** 60 F.3d 1167, 1172 (5th

9

Cir. 1995)) (quoting *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir. 1983)). Counsel for Harrell actively participated in exercising peremptory challenges and striking jurors for cause. After review of the record, including voir dire of the jury, it cannot be said that counsel's conduct during voir dire permeated the entire trial with obvious unfairness.

¶22. Additionally, Harrell claims his counsel erred by not asking for a mistrial when two jurors were dismissed for having improper contact with Harrell's father. The trial judge properly instructed the jury not to mingle with any spectators, witnesses, or the attorneys. However, during trial, two jurors were seen getting out of the car with Harrell's father, after having had lunch with him. The trial judge stated neither of the jurors responded they knew Harrell's family during voir dire. The trial judge asked all jurors if they had had any contact with Harrell's father and they answered no. The trial judge asked Harrell's father to point out the two jurors, which he did. The two jurors stated they did not know they could not have contact with Harrell's father. The judge reprimanded Harrell's father and removed him from the courtroom for the duration of the trial. The trial judge dismissed the two jurors and again warned the remaining jurors not to have any contact with the participants in the trial, nor their family members. Counsel for Harrell unsuccessfully objected to their removal (outside the presence of the remaining jurors). This motion was denied by the trial judge who stated he saw no prejudice.

¶23. Harrell asserts his counsel should have asked for a mistrial. "This Court reviews motions for mistrial under an abuse of discretion standard." *Parks v. State,* 930 So.2d 383, 386 (Miss. 2006) (citation omitted). "The trial court must declare a mistrial when there is an

10

error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case, however, the trial judge is permitted considerable discretion in determining whether a mistrial is warranted because the judge is best positioned to measure the prejudicial effect." *Id.* (citations omitted). Since the trial court found that no prejudice resulted from counsel's failure to move for a mistrial, this failure does not constitute ineffective assistance by counsel. We cannot say the trial court abused its discretion.

**(d) Harrell claims no motion for JNOV or new trial was filed by his defense counsel.**

¶24.    Included in the record is an order by the trial court denying Harrell's Motion for JNOV, or in the alternative, Motion for New Trial. This order was prepared and presented by counsel for Harrell. A Motion for JNOV, or in the alternative, Motion for New Trial, is not included in the record. However, an order in the record denying such evidences the trial court considered and rejected Harrell's request. This issue is without merit.

**(e) Harrell claims he was not given an opportunity for allocution at his sentencing hearing and his attorney did not appear at the sentencing hearing.**

¶25.    Harrell claims his counsel was ineffective because Welch did not attend Harrell's sentencing hearing. However, Harrell was represented by another public defender, Estess. During the sentencing hearing, there were no witnesses or mitigating circumstances presented on behalf of Harrell. In his brief to this Court, Harrell offers no proof that he would have called witnesses or desired to present mitigating circumstances. Harrell offers no evidence in support of his contention that Estess was ineffective during the sentencing

11

hearing. This Court has held that Harrell "must allege matters [regarding ineffective assistance] with specificity and detail." *Perkins v. State,* 487 So.2d 791, 793 (Miss. 1986). Harrell offers only an unsupported assertion that he was prejudiced because his counsel "failed to show up." Therefore Harrell has failed to prove that "under the totality of the circumstances, *prejudice* resulted from a *deficiency* in counsel's performance." *Earley v. State,* 595 So.2d 430, 433 (Miss. 1992) (quoting *Barnes v. State*, 577 So. 2d 840, 841 (Miss. 1991) (emphasis in original).

¶26. Further, Harrell claims he was not given an opportunity to make a statement at his sentencing hearing. This Court has held, "Allocution is not a matter of right." *Id.* During sentencing, neither Harrell nor Estess requested that Harrell be allowed to make a statement. This Court has held counsel was not ineffective when the defendant was not afforded allocution, because neither the defendant nor his counsel requested that the defendant make a statement prior to sentencing. The Court found the defendant was not entitled to allocution as he made no indication he desired to make a statement. *See Berry v. State,* 288 So.2d 457, 460 (Miss. 1974). Because allocution is not a right, this claim fails to rise to the level of ineffectiveness as set forth in *Strickland.*

¶27. The claims by Harrell that he was denied ineffective assistance of counsel during his sentencing hearing fails to meet the two-prong test outlined in *Strickland.*

## CONCLUSION

¶28. "The right to effective counsel does not entitle the defendant to have an attorney who makes no mistakes at trial. The defendant just has a right to competent counsel." *Mohr,* 584

12

So.2d at 430. After review of the record and the claims made by Harrell, this Court concludes that Harrell has failed to prove his counsel was (a) deficient and (b) that this deficient performance deprived him of a fair trial. *See Strickland,* 466 U.S. at 687. Additionally, Harrell failed to show a "reasonable probability that 'but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Ransom,* 919 So.2d at 889 (citations omitted). Accordingly, Harrell's assertions of ineffective assistance of counsel are without merit.  This Court affirms the trial court's judgment.

¶29. **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  APPELLANT IS ORDERED TO PAY RESTITUTION IN THE AMOUNT OF $52,184.67 TO FEDERATED MUTUAL INSURANCE, $39,162.51 TO SOUTHWEST MISSISSIPPI REGIONAL MEDICAL CENTER, $10,000.00 TO THE CRIME VICTIMS' COMPENSATION FUND, COURT APPOINTED ATTORNEY'S FEES IN THE AMOUNT OF $2,500.00 AND COURT COSTS.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, EASLEY, CARLSON AND DICKINSON, JJ., CONCUR.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**