# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00457-SCT

*MARTEZZARIEN WELCH a/k/a/*
*MARTEZZERIEN WELCH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/2022 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| TRIAL COURT ATTORNEYS: | MILTON CARROLL McCARDLE |
| | HEATHER LYNN HALL |
| | NOAH MANASEH DRAKE |
| | LARRY GUS BAKER |
| | PRICE DARBY HENLEY |
| | DANIELLA MARIE SHORTER |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES D. SHANNON |
| | HEATHER LYNN HALL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DANIELLA MARIE SHORTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/01/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Martezzarien Welch was convicted of statutory rape by a Copiah County jury. Welch was identified by the victim, and his DNA matched semen found on the victim. On appeal, Welch argues that he received ineffective assistance of counsel because his attorney failed to determine whether Welch's father's or great uncle's DNA may have matched the semen

found on the victim. He points out that both men were present at the home when the rape occurred. And he argues that because they are all related and share DNA markers, it is possible that their DNA samples, had they been collected and tested, also would have matched the semen.

¶2. The record affirmatively shows, however, that counsel's decision not to collect and test Welch's father's and great uncle's DNA was reasonable trial strategy and was not deficient performance. Additionally, Welch was not prejudiced by his counsel's decision. Welch did not receive ineffective assistance of counsel on this matter. Therefore, we deny his ineffective-assistance-of-counsel claim with prejudice, and we affirm his conviction and sentence.

**FACTUAL AND PROCEDURAL HISTORY**

¶3. On June 12, 2020, fifteen-year-old Jane[1] was asleep in her bed at the home of her grandmother's boyfriend, Joe.[2] Jane was awoken by "Pokey," whom she later identified as Martezzarien Welch.[3] Welch climbed on top of Jane and forced her to have sexual intercourse with him.

¶4. After Welch left Jane's bedroom, Jane called her sister and texted her grandmother, Grace, and informed them that Welch had raped her. Grace drove to the house and saw Joe

---

[1] The names of the individuals in this case have been changed to preserve the victim's anonymity.

[2] Joe is Welch's great uncle.

[3] Welch was twenty-three years old on June 12, 2020.

and Welch's father, James, working outside in the yard. Inside the home, Grace found Jane in her room and Welch in the guest room. Grace confronted Welch about the rape, but he denied having any knowledge about what happened. Welch left the house with James.

¶5.     Grace called the police. Once on the scene, the officers interviewed Jane, Grace, and Joe. Jane informed the officers that Welch had raped her. The officers then directed Grace to take Jane to the hospital for a sexual-assault examination. The examination involved taking swabs of Jane's vaginal and rectal areas for analysis at the Mississippi Forensics Laboratory.

¶6.     Amy Malone, a forensic serologist with the Mississippi Forensics Laboratory, tested the swabs taken from Jane for the presence of seminal fluid. Malone's tests revealed that seminal fluid was present on the swabs of Jane's vaginal area.

¶7.     Officers obtained a search warrant for Welch's DNA and swabbed Welch's mouth pursuant to that warrant. Joseph Heflin of the Mississippi Forensics Laboratory compared the DNA collected from Welch to the seminal fluid found on Jane. Heflin found that "the DNA  profile that [he] generated from the vaginal swabs was *exactly the same* as the DNA profile [he] generated from Mr. Welch." (Emphasis added.)[4] He also found that there was

_____

[4] Heflin's report reflected that "DNA test results for the sperm cell fraction of the vaginal swabs . . . are consistent with the reference sample of the suspect. Therefore, Martezzrien [sic] Welch is not excluded as a possible DNA donor to this sample." The report further reflected that:

> For the twenty-one markers compared, the genetic profile for the sperm cell fraction of the vaginal swabs occurs with a frequency of approximately 1 in

only one individual's seminal fluid present on the victim.

¶8.     Welch was indicted for statutory rape under Mississippi Code Section 97-3-65(1)(a) (Rev. 2020). The trial judge appointed Milton McCardle as Welch's counsel. But, after he had several issues with McCardle, Welch asked the judge to appoint new counsel. The judge appointed Noah Drake as Welch's counsel.

¶9.     At trial, Welch's defense was that either his father, James, or his great uncle, Joe, was responsible for the rape. His counsel pointed out that both men were present at the home when the rape occurred. And counsel argued that because all the men were all related and shared DNA markers, it was possible that their DNA samples, had they been collected and tested, also would have matched the seminal fluid found on Jane.

¶10.     The jury heard testimony from Jane, Grace, Joe, and Welch in addition to testimony from law enforcement officers and employees of the Mississippi Forensics Laboratory. Ultimately, the jury found Welch guilty of statutory rape. The trial judge sentenced Welch to a term of twenty years in the custody of the Mississippi Department of Corrections with no possibility of parole.

## STATEMENT OF THE ISSUES

¶11.     The sole issue on appeal is whether Welch's counsel was ineffective.

## DISCUSSION

---

>10 billion random, unrelated persons of the Caucasian, African American, and Hispanic populations.

4

¶12.    Welch argues that he received ineffective assistance of counsel because his counsel failed to determine whether Welch's father's or great uncle's DNA matched the seminal fluid found on the victim. He further argues that had his attorney tested DNA samples from his father and great uncle against the seminal fluid, the outcome of the trial reasonably could have been different.

¶13.    "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (Miss. 2020) (alteration in original) (internal quotation marks omitted) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (Miss. 2016)). But this Court will "resolve[ ] ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.* (citing *Swinney v. State*, 241 So. 3d 599, 613 (Miss. 2018); *Ashford v. State*, 233 So. 3d 765, 779-81 (Miss. 2017); M.R.A.P. 22).

¶14.    "A claim for ineffective assistance of counsel must meet the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Harrell v. State*, 947 So. 2d 309, 313 (Miss. 2007) (citing *Bennett v. State*, 933 So. 2d 930, 943 (Miss. 2006); *Sipp v. State*, 936 So. 2d 326, 334 (Miss. 2006); *Byrom v. State*, 927 So. 2d 709, 714 (Miss. 2006)). "The defendant must demonstrate [(1)] that his counsel's performance was deficient, and [(2)] that the deficiency prejudiced the defense of the case." *Id.* (quoting *Ransom v. State*, 919 So. 2d 887, 889 (Miss. 2005)). "To determine the second prong . . . , the standard is 'a reasonable probability that, but for counsel's unprofessional

5

errors, the result of the proceeding would have been different.'" *Id.* (internal quotation mark omitted) (quoting *Ransom*, 919 So. 2d at 890).

¶15.   "In considering a claim of ineffective assistance of counsel, an appellate court must strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy." *Liddell v. State*, 7 So. 3d 217, 219 (Miss. 2009) (internal quotation marks omitted) (quoting *Bennett v. State*, 990 So. 2d 155, 158 (Miss. 2008)). At trial, Welch's counsel argued that the prosecution failed to investigate Welch's father and great uncle and test their DNA against the seminal fluid found on the victim. Counsel further argued to the jury that this was a weakness in the prosecution's case that created reasonable doubt as to whether Welch committed the rape. If the prosecution had tested Welch's father's and great uncle's DNA, counsel argued, the prosecution might have found that their DNA also matched the seminal fluid found on Jane due to their sharing genetic markers with Welch. The jury, however, rejected this argument and found Welch guilty of statutory rape beyond a reasonable doubt.

¶16.   Now, Welch unconvincingly presents the same argument to this Court. Only this time he blames his counsel for failing to determine whether his father's or great uncle's DNA matched the seminal fluid found on the victim. And he claims that his counsel's conduct in this matter rises to the level of ineffective assistance of counsel.

¶17.   It is apparent from the record, however, that counsel's decision not to obtain and test the DNA of Welch's father and great uncle amounted to reasonable trial strategy. *See Havard*

6

*v. State*, 928 So. 2d 771, 788 (Miss. 2006) ("It is apparent from the record that defense counsel's strategy was to attack the weakness of the State's case, and . . . such a defense strategy is not per se ineffective assistance of counsel under *Strickland*."). Jane identified Welch as the man who had raped her. Additionally, Joseph Heflin from the Mississippi Forensics Laboratory testified that "the DNA profile [he] generated from the vaginal swabs was *exactly the same* as the DNA profile [he] generated from Mr. Welch."

¶18.    But, as Welch's counsel argued at trial, the prosecution did not test the DNA of the two other males present at the home during the rape. And since these males were Welch's relatives and shared similar DNA with him, Welch still had an argument to present to the jury showing that there may be reasonable doubt as to whether he committed the rape. In fact, given the evidence against him, this may have been Welch's only argument. Moreover, had Welch's counsel obtained DNA from Welch's father and great uncle and determined they did not exactly match the seminal fluid, that entire argument would evaporate. "By conducting DNA testing it may have removed the 'empty chair' defense counsel was trying to fill with [Welch's father and great uncle]." *Grayson v. State*, 879 So. 2d 1008, 1017 (Miss. 2004).

¶19.    Assuming arguendo that Welch's counsel's conduct was deficient, the record reveals that deficiency did not prejudice the defendant. There is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrell*, 947 So. 2d at 313 (internal quotation mark omitted) (quoting *Ransom*, 919 So. 2d at 890). Jane testified that Welch raped her, and she identified him as her rapist

7

in court. And Joseph Heflin testified that Welch's DNA profile "was exactly the same as" the profile he generated from the seminal fluid on the vaginal swabs taken from Jane. Even assuming Welch could establish that his father's or his great uncle's DNA would have matched the seminal fluid due to their shared genetic markers, that would not change the fact that Jane identified Welch as her rapist and that Welch's DNA was an exact match. Therefore, Welch cannot show that the outcome of his trial would have been different had his counsel obtained and tested his father's and great uncle's DNA.

## CONCLUSION

¶20.    Welch's counsel's decision not to obtain and test the DNA of Welch's father and great uncle was reasonable trial strategy and was not ineffective assistance of counsel. Additionally, Welch cannot show that he was prejudiced by his counsel's decision. Therefore, we deny Welch's ineffective-assistance-of-counsel claim with prejudice, and we affirm his conviction and sentence.

¶21.    **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**